```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
LIN KWOK KEUNG,                                                  :
                                                                 :
                                   Plaintiff,                    :
                                                                 :      22 Civ. 3725 (JPC)
                    -v-                                          :
                                                                 :      OPINION AND ORDER
PATISSERIES SAINES CORP. et al.,                                 :
                                                                 :
                                   Defendants.                   :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff brought this action alleging that a bakery on Division Street in Manhattan called Tous Les Jours was operating in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as well as New York City and New York State law. *See generally* Dkt. 1 ("Compl."). Two Defendants were named: Patisseries Saines Corp., the lessee on the property (*i.e.*, the entity operating the bakery), and 7 Wu Real Estate Ltd., the lessor of the property (*i.e.*, the landlord). Just five days after the Court set a briefing schedule for Defendants' anticipated motion to dismiss, and almost a month before that motion was due, Plaintiff filed a notice of voluntarily dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), resulting in the termination of this action.

Defendants now seek sanctions against Plaintiff's attorney, Ben-Zion Bradley Weitz, Esq., pursuant to 28 U.S.C. § 1927 and the Court's inherent power. Defendants contend that Mr. Weitz, who has represented plaintiffs in a massive number of cases brought pursuant to the ADA in this District, has engaged in unreasonable and vexatious conduct in this case, including by pursuing this action on behalf of a client who lacked standing. For reasons discussed herein, that motion is

denied.  Defendants have made no showing of bad faith, vexatious conduct, or unreasonable multiplication of these proceedings on the part of Mr. Weitz.  Defendants point largely to the numerous other cases filed by Plaintiff and Mr. Weitz—most of which, as Defendants acknowledge, resulted in monetary settlements.  Furthermore, dismissal occurred here at an early stage of the litigation, before any discovery had commenced and almost a month before Defendants' motion to dismiss was due, and Mr. Weitz already has articulated a reasonable explanation for his client's decision to cease pursuing this action, citing, *inter alia*, recent caselaw within this Circuit on standing in ADA actions.

## I.     Background

Plaintiff commenced this action on May 7, 2022, seeking declaratory and injunctive relief pursuant to the ADA, as well as compensatory damages under the New York City Human Rights Law and the New York State Human Rights Law, punitive damages under the Administrative Code of the City of New York, and attorneys' fees and costs under the ADA and the New York City Human Rights Law.  Compl. at 1, ¶¶ 38-41.  Plaintiff, who allegedly suffers from a qualified disability under the ADA and uses a wheelchair for mobility, claimed that he visited Tous Les Jours, but "was denied full and equal access to, and full and equal enjoyment of, the facilities at" the bakery.  *Id.* ¶ 4; *accord* Dkt. 24 ("Am. Compl.") ¶ 4.

In his original Complaint, Plaintiff alleged six specific violations of the ADA and its implementing regulations, *see* 28 C.F.R. § 36.101 *et seq.*: (1) "Failure to provide an accessible entrance, due to a step at said entrance, without an ADA-compliant ramp and/or wheelchair lift, in violation of 28 C.F.R. Part 36, Section 4.14," Compl. ¶ 16(i); (2) "Failure to provide a safe and accessible means of egress from [Tous Les Jours], in violation of 28 C.F.R. Part 36, Section 4.3.10," *id.* ¶ 16(ii); (3) "The dining counter is higher than 34 inches above the finish floor in

violation of the requirements of 28 C.F.R. Part 36, Section 5.2 which requires a maximum height of the counter, or a 60-inch-wide section of it, to be 34 inches," *id.* ¶ 16(iii); (4) "Various items of merchandise for sale, located on high shelves/counter, are at inaccessible heights and reach ranges, in violation of 28 C.F.R. Part 36, Section 4.2," *id.* ¶ 16(iv); (5) "Failure to provide adequate directional and accurate informational signage throughout [Tous Les Jours], as required by 28 C.F.R. Part 36, Section 4.1.3(16)," *id.* ¶ 16(v); and (6) "Failure to provide signage, in [Tous Les Jours], addressing people with disabilities, telling them that accessible services are provided, as required by 28 C.F.R. Part 36, Section 4.30.4," *id.* ¶ 16(vi). *See also id.* ¶ 17 (alleging that, "[u]pon information and belief, there are other current violations of the ADA at [Tous Les Jours], and only once a full inspection is done can all said violations be identified"). The original Complaint further alleged that the removal of these architectural barriers would be "readily achievable." Compl. ¶ 18.

After delays in service of the summons and the original Complaint, apparently resulting from a backlog at the New York Department of State in effecting service, Dkt. 13, and because 7 Wu Real Estate Ltd. had moved, Dkt. 16, both Defendants appeared in this case through counsel as of November 4, 2022, Dkts. 15, 18. Shortly thereafter, on November 28, 2022, Defendants expressed an intent to move to dismiss the original Complaint. Dkt. 19 ("11/28/22 Ltr."). In their pre-motion letter, Defendants observed that Plaintiff and his attorney, Mr. Weitz, "have filed a total of 51 ADA cases against various Defendants in lower Manhattan since 2015." *Id.* at 2. Noting that Plaintiff apparently lives on Roosevelt Island and is confined to a wheelchair, Defendants maintained that "[i]t strains credulity to imagine that Plaintiff – who [sic] none of my clients have ever witnessed at any of their locations, travels all the way to Division Street just to patronize the Tous Les Jours bakery – which has other franchises nearer to his home, or has any

reason to return to shop there in the future." *Id.* Defendants further criticized the original Complaint for alleging standing "in only formulaic and conclusory fashion" by referencing a visit by Plaintiff to Tous Les Jours, *see* Compl. ¶ 14 (alleging that "Plaintiff personally visited" Tous Les Jours "[p]rior to the filing of this lawsuit"), and argued that Plaintiff should be required to plead specific details of that visit and any denial of services there. 11/28/22 Ltr. at 3. On December 14, 2022, Plaintiff responded to Defendants' November 28, 2022 letter, stating that he wished to amend his original Complaint. Dkt. 22. Later that day, the Court granted Plaintiff's request to file an Amended Complaint, ordered that he do so by December 16, 2022, and denied without prejudice Defendants' request for leave to move to dismiss. Dkt. 23 at 2; *see* Fed. R. Civ. P. 15(a)(1) (providing that a plaintiff may amend a complaint "once as a matter of course within . . . (B) . . . 21 days after service of a motion under Rule 12(b), (e), or (f)").

Plaintiff filed his Amended Complaint on December 14, 2022. The Amended Complaint added allegations regarding Plaintiff's residence on Roosevelt Island and his visit to Tous Les Jours, alleging that "Plaintiff, on or about April[] 2022, personally visited [Tous Les Jours], but was denied full and equal access to, and full and equal enjoyment of, the facilities at" the location. Am. Compl. ¶ 4. The Amended Complaint further alleged the same six specific ADA violations that were contained in the original Complaint, *compare id.* ¶ 16, *with* Compl. ¶ 16, and it sought the same relief under federal, state, and city law, *compare* Am. Compl. ¶¶ 38-41, *with* Compl. ¶¶ 38-41.

On December 28, 2022, two weeks after the filing of the Amended Complaint, Defendants sought leave to move to dismiss that pleading. Dkt. 25 ("12/28/22 Ltr."). Once again, Defendants argued that Plaintiff lacked standing, citing the Supreme Court's June 25, 2021 decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and the Second Circuit's June 2, 2022

decision in *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022).[1] *See* 12/28/22 Ltr. at 1 ("Although in past years, an ADA Plaintiff seeking injunctive relief and monetary recovery may have once been able to allege standing by boilerplate, conclusory allegations, this is no longer the case.  The question of whether Plaintiff may maintain the present action has now been called into question by the recent holdings of *TransUnion* . . . and *Calcano* . . . ."); *see also id.* at 2 (arguing that the Second Circuit applied *TransUnion* in the context of the ADA, and "[c]onclusory allegations, merely parroting case law requirements do not establish ADA standing").  After receiving a response to that pre-motion letter from Plaintiff on January 19, 2023, Dkt. 30, and a further reply from Defendants the next day, Dkt. 31, the Court issued a briefing schedule on February 1, 2023, setting a March 3, 2023 deadline for Defendants' motion to dismiss, Dkt. 32.

On February 6, 2023, however, just five days after the Court set the motion to dismiss briefing schedule and almost a month before Defendants' motion would have been due, Plaintiff filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. 34; *see* Fed. R. Civ. P. 41(a)(1)(A) (permitting a plaintiff to "dismiss an action without a court order by filing (i) a notice of dismissal before the opposing party serves either an answer or a

---

[1] In *TransUnion*, the Supreme Court discussed the constitutional requirements for standing, including "[w]hat makes a harm concrete for purposes of Article III," *TransUnion*, 141 S. Ct. at 2204, and noted that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial," *id.* at 2210.  In *Calcano*, the Second Circuit affirmed the district court's dismissals for lack of standing of five ADA lawsuits brought against stores that failed to carry braille gift cards, explaining that "conclusory allegations of intent to return and proximity are not enough—in order to 'satisfy the concrete-harm requirement' and to 'pursue forward-looking, injunctive relief,' Plaintiffs must establish a 'material risk of future harm' that is 'sufficiently imminent and substantial.'" *Calcano*, 36 F.4th at 72 (quoting *TransUnion*, 141 S. Ct. at 2210)).

motion for summary judgment"). Because Defendants had filed neither an answer nor a motion for summary judgment, the action was terminated. Dkt. 35.

Five weeks later, on March 13, 2023, Defendants filed another pre-motion letter, this time seeking leave to file a motion for sanctions against Plaintiff's counsel, Mr. Weitz, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, and accusing Mr. Weitz of "having unreasonably and vexatiously, in bad faith, multiplied the proceedings in this action, to the cost and detriment of Defendants herein." Dkt. 36 at 1. After receiving a response from Mr. Weitz, Dkt. 38, the Court scheduled a conference for April 25, 2023 to discuss Defendants' anticipated sanctions motion, Dkt. 39 at 1. The Court directed Defendants to be prepared to address at the conference why sanctions would be appropriate given that the case was voluntarily dismissed at an early stage of the litigation, prior to the onset of discovery, and further whether Defendants had any evidence that Mr. Weitz acted in bad faith or that his client's claims were brought without color of law. *Id.* The conference was then adjourned at Defendants' request, and rescheduled for May 25, 2023. Dkts. 40-41.

At the May 25, 2023 conference, Mr. Weitz first explained the basis for bringing this lawsuit, representing that his client had visited Tous Les Jours and encountered a barrier to accessing the premises:

> My client, on the specific date that's specified in the amended complaint, attempted to go into this facility; however, there was a step at the location, and that architectural barrier discriminated against my client, which is enumerated in the amended complaint.
>
> So the good-faith basis is that he wanted to go in there, he could not go in there, due to the noncompliance with the ADA and architectural [an] barrier that exists.

> So that was the good-faith basis for initiating the lawsuit and the amended complaint.

Dkt. 44 ("5/25/23 Tr.") at 3:16-25.  Mr. Weitz explained that his client's decision to discontinue this action was influenced in part by recent cases including *Calcano* and *Gannon v. 31 Essex Street LLC*, No. 22 Civ. 1134 (ER), 2023 WL 199287 (S.D.N.Y. Jan. 17, 2023),[2] which further analyzed "intent to return" for purposes of ADA standing.  5/25/23 Tr. at 4:1-4.  While maintaining that his client did in fact intend to return to Tous Les Jours, Mr. Weitz acknowledged that Plaintiff does not live or in Chinatown but rather "lives on Roosevelt Island," and thus was "concerned, after analyzing the recent line of cases, that perhaps that might affect his standing on intent to return." *Id.* at 4:5-14.  Mr. Weitz further added that his client "was apprehensive of being deposed," which additionally led to the decision to voluntarily dismiss the case.  *Id.* at 4:15-5:1.  Mr. Weitz explained that a similar reasoning led to his client's decision to dismiss two other lawsuits in this District that Defendants cited in their pre-motion letter.  *Id.* at 65:11; *see* Dkt. 36 at 1 n.1 (citing *Keung v. Mays Beauty Salon & Spa Inc.*, No. 22 Civ. 4466 (LGS) (S.D.N.Y.); *Keung v. Spa For Life Mckenzie Inc.*, No. 22 Civ. 3727 (JHR) (S.D.N.Y.)).  Later on in the conference, Mr. Weitz represented that his client knew that he might have to testify at a deposition or trial when he initiated this and other lawsuits, but grew increasingly reluctant to testify when a deposition became imminent, particularly given his worsening health issues:

> But as can occur in a practical situation, when you have the idea that you will be deposed shortly, as it was discussed in the other case that [Defendants' counsel]

---

[2] In *Gannon*, the court found that standing was lacking because the plaintiff's allegations relating to any intent to return to the subject premises, also a bakeshop, were too general and conclusory, as the plaintiff did "not assert that he frequents other bakeshops in the neighborhood," failed to "explain why he wanted to access the property in the first place or why he would want to access it in the future," and did "not provide sufficient evidence that he resides in close proximity to the property."  2023 WL 199287, at *4.

7


alluded to, in the *May*[*s*][3] case, in one week, he becomes apprehensive.  He has a lot of health issues.  And, certainly, it's gotten worse over the period of time that I've known the plaintiff.  And when I went to visit him – for example, he's confined to a bed – other than his wheelchair – he's confined to a bed with pulleys.  He was apprehensive to enter into a deposition in the imminent future.

5/25/23 Tr. at 19:20-20:4.

After hearing from Defendants' counsel, the Court expressed skepticism that a motion for sanctions would have merit given Defendants' apparent "acknowledge[ment] . . . that the entrance [to Tous Les Jours] may not be in strict compliance with the regulations . . . promulgated under the ADA" suggesting that "the initial filing of the lawsuit . . . would not seem to be . . . frivolous." *Id.* at 24:1-9.  The Court additionally noted that the voluntary dismissal here occurred at an earlier stage of the case than in another recent case where it had denied sanctions.  *See id.* at 24:18-25:9 (discussing *Doe v. 239 Park Ave. S. Assocs., LLC*, No. 21 Civ. 279 (JPC), 2022 WL 4592713 (S.D.N.Y. Sept. 30, 2022)).  The Court instructed Defendants to advise the Court by June 8, 2023 as whether they still wished to proceed with a sanctions motion.  *Id.* at 25:14-26:12.

On June 8, 2023, Defendants reported their intent to move for sanctions against Plaintiff and Mr. Weitz.  Dkt. 42.  On June 30, 2023, Defendants filed notice of their motion for sanctions, Dkt. 49 ("Motion"), along with an affidavit from Defendants' counsel with numerous exhibits

---

[3] In *Mays*, Plaintiff, also represented by Mr. Weitz, brought an ADA suit against a business on Broome Street in Manhattan.  *See generally* Amended Complaint, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Dec. 7, 2022), Dkt. 35.  After the defendant in *Mays* filed a motion to dismiss for lack of standing, Motion, Declaration, and Memorandum of Law, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Jan. 20, 2023), Dkts. 47-49, Plaintiff voluntarily dismissed the action pursuant to Rule 41(a)(1)(A)(i), Notice of Voluntary Dismissal, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Feb. 5, 2023), Dkt. 57.  And there too, the defendant's counsel (the same attorney as in this case) submitted a letter on behalf of his client requesting a pre-motion conference for an anticipated sanctions motion.  Letter Motion, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Mar. 9, 2023), Dkt. 58.  The court in *Mays*, however, denied the defendant's request for leave to file such a motion.  Order, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Mar. 17, 2023), Dkt. 61.

including information on prior filings by Plaintiff in this District, Dkt. 50 ("Minsley Declaration"). Defendants then filed a memorandum of law in support of their sanctions motion on July 5, 2023. Dkt. 52 ("Memorandum of Law"). After receiving the Motion and the Minsley Declaration, but before receiving the Memorandum of Law, the Court issued an Order explaining that it would advise the parties if a response from Plaintiff is necessary. Dkt. 51. Having reviewed the Memorandum of Law and the Minsley Declaration, the Court has determined no further briefing is needed to resolve Defendants' motion.

## II.   Discussion

Defendants ask the Court to sanction Plaintiff and his counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent power. Motion at 1; Memorandum of Law at 1. Under 28 U.S.C. § 1927, a court may impose sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 49 (S.D.N.Y. 1993) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

Courts also have the "inherent power" to sanction "the offending party and [their] attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985)). Such "inherent power to sanction derives from the fact that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "The Supreme Court has cautioned that because of the

'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'" *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting *Chambers*, 501 U.S. at 44).

To impose sanctions under either section 1927 or its inherent authority, "a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co.*, 194 F.3d at 336; *accord Oliveri*, 803 F.2d at 1273 (2d Cir. 1986) (explaining that there is no "meaningful difference" between the standards for imposing sanctions under section 1927 and a court's inherent authority). "A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Even where the standard is met, "[t]he Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017); *see also Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ. 10135 (SAS), 2003 WL 22434153, at *7 (S.D.N.Y. Oct. 24, 2003) (finding that "§ 1927 by its terms (*may* be required) confides an award of fees against counsel to the Court's discretion" (internal quotation marks omitted)).

"[A] claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co.*, 194 F.3d at 337 (internal quotation marks omitted). The relevant inquiry is whether a reasonable attorney and a reasonable plaintiff "could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*." *Id.* (internal quotation marks omitted). An action is taken in bad faith when it is "motivated by improper purposes such as harassment or

delay." *Id.* at 336. "Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Oliveri*, 803 F.2d at 1272 (alteration omitted) (quoting *Hall v. Cole*, 412 U.S. 1, 15, (1973)). While "[b]ad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," *Schlaifer Nance & Co.*, 194 F.3d at 338 (internal quotation marks omitted), the Second Circuit has declined to hold "that a frivolous position may be equated with an improper purpose" as "[s]uch a simple equation would turn the two-part standard into a one-part standard," *Sierra Club*, 776 F.2d at 391; *see also Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (reversing award of sanctions where "the Court's conclusory determination that [the plaintiff's] motion was filed in bad faith rested almost entirely on its lack of merit"). The Second Circuit has "interpreted the bad faith standard restrictively . . . [t]o ensure that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." *Eisemann*, 204 F.3d at 396 (internal quotation marks and ellipses omitted).

Here, Plaintiff has not shown that Mr. Weitz unreasonably or vexatiously multiplied the proceedings in this litigation or otherwise has litigated this action in bad faith. To start, there is reason to believe that both the original Complaint and the Amended Complaint presented colorable claims for violations of the ADA. In those complaints, Plaintiff identified six categories of specific violations of the ADA and its implementing regulations at Tous Les Jours. *See* Am. Compl. ¶ 16; Compl. ¶ 16. Regardless of whether other parts of the Complaints in this case are "cookie cutter" when compared to prior filings by Mr. Weitz,[4] *see* Minsley Declaration ¶¶ 8-10; Memorandum of Law at 9, the allegations, which identify particular areas of the bakery that allegedly are not ADA-

---

[4] It should hardly be surprising that multiple complaints filed by the same attorney alleging violations of the same statute would contain similar, if not identical, background discussions of that statute.

11

compliant with citations to the relevant regulations, are sufficient to plausibly allege violations of the ADA at Tous Les Jours. And from the colloquy at the May 25, 2023 court appearance, it appears likely that there was at least some merit to the allegations that Tous Les Jours is not in full compliance with the ADA. *See* 5/25/23 Tr. at 24:1-4. While Defendants' counsel now maintains "that it is not at all clear that the premises in question . . . had any violations of the ADA," Minsley Declaration ¶ 11, he seemed to acknowledge otherwise at the May 25, 2023 conference when he noted there was a step at the entrance to Tous Les Jours, yet dismissed any barrier to access as "de minimis," 5/25/23 Tr. at 15:2-20.

    Defendants' primary argument seems to be that Plaintiff should have never initiated this action in the first place in light of *TransUnion* and *Calcano*, which "imposed a new, stricter standard to plead standing to maintain an ADA action in this Circuit." *See* Memorandum of Law at 4; *see generally id.* at 2-6 (discussing, *inter alia*, *TransUnion*, *Calcano*, and *Gannon*); *see also id.* at 10 ("Counsel Weitz was or should have been highly familiar with the current state of the law in the Second Circuit concerning standing to file ADA cases . . . ."). To be sure, if the undersigned were to adopt the analysis of other district judges in this Circuit following *Calcano*, the result might be that Plaintiff lacked standing to bring this action. *See, e.g.*, *Gannon*, 2023 WL 199287, at *4 (finding that the plaintiff failed to establish standing where the complaint did not allege the frequency of his visits to similar establishments in the neighborhood, did not explain why he accessed the property in the first place or why he planned to return, and did "not provide sufficient evidence that he resides in close proximity to the property"). But the contours of ADA-standing in this Circuit post-*Calcano*, which was decided just over one year ago, are still being developed. And *Gannon*, the case which appeared to present the most analogous facts to the instant action, was decided after Plaintiff filed the Amended Complaint. Accordingly, the Court does not find

12

that this lawsuit was initiated in bad faith solely based on Defendants' contention that Plaintiff lacked standing.

Rather, Plaintiff and Mr. Weitz apparently came to the realization, after initiating this lawsuit, that Plaintiff faced litigation risk in establishing standing given developments in the law in ADA cases, and in particular on the issue of a plaintiff's intent to return, and decided to voluntarily dismiss the case accordingly. *See* 5/25/23 Tr. at 4:1-4. These legal developments, Mr. Weitz explained, arguably make it more difficult for his client to establish standing. *Id.* at 4:5-5:1; *see also id.* at 20:17-20 ("[Plaintiff] does visit Chinatown often, he's of Chinese descent, and he does eat in Chinatown regularly, but, again, it became more difficult to establish standing based on the new line of case law.").

Furthermore, Mr. Weitz provided an additional, reasonable explanation for Plaintiff's decision to voluntarily dismiss: his client expressed a reluctance to being deposed only after this litigation had commenced. *See* 5/25/23 Tr. at 4:15-5:1. Defendants argue only that "it is quite disingenuous to suggest that Plaintiff, having brought 51 ADA cases in this District over the last eight years – essentially a professional litigant – could expect to prosecute these cases without being deposed or otherwise testifying under oath." Minsley Declaration ¶ 23. But Mr. Weitz did not contend otherwise. Mr. Weitz noted that his client was aware of what bringing this suit entailed, but became apprehensive when a deposition appeared imminent, particularly in light of recent unfavorable caselaw and his worsening health issues:

> [Plaintiff] has a lot of health issues. And, certainly, it's gotten worse over the period of time that I've known the plaintiff. And when I went to visit him – for example, he's confined to a bed – other than his wheelchair – he's confined to a bed with pulleys. He was apprehensive to enter into a deposition in the imminent future.
>
> Certainly, he is aware of everything to do with this case; he's been to the courthouse before, he's been in front of mediations with Mr. Minsley before, he certainly does

> participate fully in these cases, but he became apprehensive at that moment, your Honor.
>
> And, certainly, he has not faced motions to dismiss similar to what was happening here coupled with the recent line of case law. We previously analyzed it. We never saw any issue with standing, but, obviously, there was a whole new line of case law with intent to return, and there was a nexus between how far somebody lives or works versus where the location is.

5/25/23 Tr. at 19:24-20:16.

Importantly, after deciding to dismiss his action, Plaintiff filed his notice of voluntary dismissal at an early stage of this litigation, before either Defendant had answered the original Complaint or the Amended Complaint, before any motion to dismiss had been filed, before any settlement conference or mediation had occurred, and before any discovery had commenced. In fact, the notice of voluntary dismissal was filed just five days after the Court issued a briefing schedule on Defendants' anticipated motion to dismiss, and nearly four weeks before Defendants' motion was due. This was not a situation where a plaintiff unreasonably delayed dismissing the action, such as by waiting until his or her adversary had drafted and filed a motion to dismiss or had engaged in costly discovery.[5]

---

[5] As noted, in *Mays*, where Plaintiff, represented by Mr. Weitz, also voluntarily dismissed an ADA case involving a commercial establishment in Manhattan, the court denied the defendant's request for leave to even file a sanctions motion. Order, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Mar. 17, 2023), Dkt. 61, at 1; *see supra* note 3. In fact, in *Mays*, the defendant had engaged in considerably more work than Defendants here, including filing a motion to dismiss and engaging in at least some discovery. *See* Letter Motion, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Mar. 9, 2023), Dkt. 58, at 3. The court's explanation for denying leave to file a sanctions motion, even under those more compelling circumstances, is instructive:

> Defendant's letter does not provide a sufficient basis to conclude Plaintiff acted in bad faith in the course of this litigation so as to merit sanctions. It further does not establish that Plaintiff unreasonably multiplied the proceedings in this litigation. This case was still in early stages at the time of dismissal. A status letter filed February 1, 2023, indicates that minimal discovery had taken place prior to the dismissal of this action on February 5, 2023. Although Defendant had filed a

Finally, Defendants' conclusory accusation that Mr. Weitz has "unreasonably and vexatiously, in bad faith, multiplied the proceedings in this action," without more, is insufficient to justify sanctions. Motion at 1; *accord* Minsley Declaration ¶ 2; *see Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) ("[T]he court's factual findings of bad faith must be characterized by 'a high degree of specificity.'" (quoting *Oliveri*, 803 F.2d at 1272)). Defendants seem to want this Court to infer that Mr. Weitz vexatiously pursued this litigation based on the fact that he and his client supposedly have brought approximately fifty-one other suits alleging ADA violations against businesses in the Chinatown neighborhood of Manhattan. *See* Memorandum of Law at 9 (referring to Mr. Weitz's "history of abusive filings of ADA cases leading up to the present case"), 9-10 ("In the past, in each case, Weitz has filed repetitive, conclusory, cookie cutter complaints against Defendant after Defendant, settling each case quickly and moving on to the next case."); Minsley Declaration ¶ 5, Exh. C (news article reporting that many small Chinese restaurants in New York have been the subject of ADA lawsuits). Defendants provide no information as to the underlying merits of those prior suits, only alleging that prior cases brought by Plaintiff and Mr. Weitz have not proceeded to trial but rather mainly resulted in settlements. Minsley Declaration ¶ 7. The Court is not prepared to make the inferential leap that the mere filing of numerous prior lawsuits, most of which were resolved by settlement, demonstrates vexatious litigation.[6]

---

motion to dismiss, that motion was not fully briefed at the time of dismissal. Leave to file a motion is denied because such a motion for sanctions would be futile.

Order, *Mays Beauty Salon & Spa*, No. 22 Civ. 4466 (LGS) (S.D.N.Y. Mar. 17, 2023), Dkt. 61, at 1.

[6] An equally plausible inference, if not a more plausible one, is that this volume of prior lawsuits against commercial establishments in Manhattan brought pursuant to the ADA, with most culminating in settlements, suggests that many places of public accommodation remain out of compliance with the ADA, even over thirty years after the statute's enactment.

In sum, Defendants have come forward with no evidence to show that Mr. Weitz unreasonably and vexatiously multiplied these proceedings or otherwise engaged in bad faith during this litigation. The Court therefore declines to impose sanctions on Mr. Weitz pursuant to section 1927 or its inherent power.

### III.   Conclusion

For the foregoing reasons, Defendants' motion for sanctions against Mr. Weitz is denied. The Clerk of Court is respectfully directed to close the motion pending on Docket 49.

SO ORDERED.

Dated: July 12, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge